Case number 15-5284 USA v. Brandon Tessier Argument not to exceed 15 minutes per side Mr. Baker, you may proceed for the appellant Good morning. May it please the court? I'm David Baker. I'm a lawyer with the Federal Public Defender's Office for the Middle District of Tennessee and I represent Brandon Tessier. I'd like to reserve three minutes for rebuttal, please, Your Honors. This case presents an important question not only for Mr. Tessier, but also for the huge number of people who are on probation in this circuit. The question is, should probationers with a search condition providing for a warrantless search be subject to full-blown searches of their homes when there is no reasonable suspicion of wrongdoing? The government's position is that probationers should be subject to full-blown searches without any reasonable suspicion but this is contrary to the custom and law. No case from the Supreme Court or the Sixth Circuit has ever upheld the search of a probationer's home when reasonable suspicion was not present. What's the best case you're going on now in this? Well, Your Honor, there was a case from this district from this circuit, excuse me, in 2005, United States v. Henry in which this court reversed the trial court and found that the evidence should be suppressed on the search of a probationer's home because reasonable suspicion was not present. What case is that? United States v. Henry, Your Honor. That is at 429 F. 3rd, 603, 2005. Also, a majority of the circuit courts... Did the probationer give some sort of a release like we had in this case where he went on probation and said you may subject me to warrantless search? In the Henry case, there was language in the probation agreement that allowed the probation officers to search for certain things. That was one of the factors that played into the Henry decision was that the things that the probation officer found were not covered by that provision. Well, it sounds like that's a substantially narrower condition of probation than exists here. I believe that is accurate, Your Honor. Nevertheless, in Henry, the court... reasonable suspicion was a key component of that case, although the court in Henry declined to address whether a probationer could give a blanket waiver of all of his Fourth Amendment rights and be subject to a suspicionless search. You said that these suspicionless searches were contrary to custom. What's that understanding based on? Your Honor, that understanding is based on 20 years of being a public defender. Based on 30-plus years of being a judge, I thought they were routine, but you may have been up closer to those whose premises have been searched than I have. Yes, Your Honor. I think if you ask most lawyers in Tennessee whether the search provision in the Tennessee contract authorizes a suspicionless search, they wouldn't think so. I would also point out that in federal practice, and I've been a federal defender for 12 years now, under the federal standard search condition that's in the standard supervisor lease agreement or probation agreement in the district courts, it basically says I allow my probation officer to come to my home and seize any items in plain view. What the custom has always been is that a probation officer has the right to go to the probationer's home. They can enter the home. They can walk around. They can talk to the probationer. They can ask them questions about compliance with their conditions. If they see contraband or something that gives them reasonable suspicion, then they can search further. You're saying they can't turn on the computer or look under the mattress? What I'm saying is they can't begin opening drawers. That's the standard provision? I think in federal court that that is. It is in the Middle District of Tennessee. That's standard in every supervisor lease and probation order. Your Honors, also a majority of the circuits, including the 1st, 2nd, 3rd, 5th, 6th, 10th, and 11th circuits, have only ever upheld searches of a probationer's home when there was reasonable suspicion present. Your Honors, the practice that I was talking about, where the probation officer can enter the probationer's home, take a look around, ask questions, is a good practice. And it's the practice that I submit is the proper balance of the probationer's privacy interests versus the government's need to promote its legitimate interest. In the Knight's case from the Supreme Court in 2001, which involved probationers and the court upheld a search because there was reasonable suspicion present, as well as in the Sampson case, which was a different outcome because it was parolees, the court said that the proper test is to balance in determining the reasonableness of a search is to balance the individual's privacy interests versus the government's interest in ferreting out crime and checking out wrongdoing. I understand the Supreme Court seemed to differentiate between parolees and probationers, but why would you? I mean, both of them are under conditions of supervision, and both of them are trying to keep from going to jail by compliance, arguably. I mean, that's what they're supposed to be doing. I think that's a great question, and I think there's a lot of important differences that will lead this court to recognize that probationers have a greater privacy interest than parolees do. So let me address some of those differences, Your Honor. Well, I don't understand it either, although I know what the Supreme Court says. I just can't imagine what the differentiation is. Well, let me explain some of the differences that I see, Your Honor. In Sampson, the court said parolees have a lesser expectation of privacy than probationers because parole is more akin to imprisonment than probation. How? Because parole is for somebody that has been found guilty of a felony crime and sent to prison. When you get out of prison, you spend the last part of your term of imprisonment on parole. But parole is like being in prison, except you're not. Let me give you some language from Tennessee. We don't have parole anymore in the federal system. Right, right. I mean... In the case of State v. Turner that the government relies on, and I imagine we'll hear from the government about, the court talked about the differences. In Turner, from the Tennessee Supreme Court, the court said, first of all, release on parole is a privilege in neither right. Under the Tennessee statutory scheme, persons released outside of prison walls on parole remain in the legal custody of the warden and are subject to all the provisions upon which their parole is conditioned. Additionally, probation is only granted for certain offenses, and it's done in lieu of imprisonment, and only certain offenders can get probation. Other differences in Tennessee, if you violate your parole, under Tennessee Code Annotated 35303 at SEC, a parolee does not have a right to a hearing when his parole is violated. For a judge, excuse me. He doesn't have a right to go before the judge and have a parole hearing. If you violate your probation... We're talking here about... I mean, here, in this case, we would not be talking about the difference between state parole and state probation. We would be talking about the difference between supervised release and probation. And somebody on supervised release doesn't remain under the legal custody of the warden, for example. I mean, and, you know, so some of this, you know... Assuming that the Supreme Court is correct in a state context, it just doesn't seem to me to have much to do with any meaningful distinction that I'm familiar with. Well, Your Honor, this... Except one person has been in prison and the other's trying to keep from going. Well, after the Sentencing Reform Act, the federal government changed pretty dramatically the way that sentencing is handled. Under Tennessee law, though, I think that we do have to look at Tennessee law in this case because Mr. Tessier was on state probation. And if... Okay, you're right. Mr. Tessier was on state probation. You're correct. Okay, and... Forget all that. Okay. Well, Mr. Tessier... That was a misguided... So when he violated his state probation, he was taken back before a state judge, had a right to have a lawyer represent him, and had a probation hearing. His probation was violated and his six-year sentence was put into effect, and he had to serve the rest of his six-year sentence. What do you think? If he had been on parole... I'm sorry, Judge Seiler. What do you think? Supervised release is closer to a parolee or a probationary? I think it's kind of a hybrid in between. In some senses, it's more like parole because you serve it at the end of your term of imprisonment, but in other senses, it's like Tennessee probation because if you violate your supervised release... You have a right to go before a judge. I go to you and I go defend you before a judge. And so it's in between the two, I think. But what we're dealing with here is Mr. Tessier on his state probation. And if he had been on parole, he wouldn't have gotten a lawyer to represent him in a parole hearing. He would have had an administrative hearing and his parole would have been violated. Can I ask about Presson a little bit? Because I thought Judge Sharp had a pretty persuasive opinion, but I don't want to rule in any way that's... I want to be cautious in ruling contrary to holdings, whether they're in our circuit or elsewhere. Now, you've cited the Henry case, and I'm going to ask her about the Henry case. Is there any other case that you have that is not a case where they uphold a search but say, we do it because we have suspicion, which is not the same as saying, if you didn't have suspicion, we wouldn't hold it? If you put those cases aside, is there any case which says that we're throwing out the search because there's no reasonable suspicion? There are cases from other circuits, I believe. What's the best case you have that actually holds it now, not saying because we don't have to go there and we're not saying now that we would go there and those kind of cases? There's a lot of that, I know. Your Honor, the only one I can think of right now is the Henry case. Otherwise, we're sort of free to come up with what we think is the right answer based on general principles. I think so, Your Honor, but guided by all of the other circuits only upholding searches where there is reasonable suspicion present. That's not a holding. And I would also ask... Those circuits are just being very careful, in my view, not to hold more than they have before them, which is admirable. It doesn't really tell us too much about what they would do if they were presented with a case before us, in my view. Now, I can't speak for my colleagues. I understand, Judge Rogers. In my brief, I asked the court to take a close look at the dissent in the Keene case, which is the Ninth Circuit case. You have a dissent in the Ninth Circuit. Yes, Your Honor, a very good one. In the Ninth Circuit case, though, the court upheld the suspicionless search. There's only two circuits that have done this, the Seventh and the Ninth. The Seventh, on a contract... We don't really have any cases that go the other way, though. They just say we're not prepared to say what the Ninth Circuit has said yet. And the government doesn't have any other cases other than the Seventh and Ninth Circuit, which are decided wrongly, Your Honor. And in the Keene dissent, very... That sort of leaves us with what Judge Sharp had, which is I'm having trouble seeing a really great difference between what the Supreme Court did and what it preserved because it didn't have before us. It looks pretty much the same. They do look pretty much the same for the reasons that Judge Gibbons has talked about, although, of course, there's some difference, or there would be nothing to preserve. But it's a very small step. But if we rule your way, we're doing something that is pretty new, that's kind of unprecedented. I'm going to ask about this Henry case. I'm not sure about the Henry case. I thought that was a state law case, but I'll ask her about that. If we're bound by it, we'll follow it. Well, I think that it's a much more radical step, Your Honor, to say that probationers can be searched without any reasonable suspicion. I'm not seeing why it's so radical to be in it. I mean, why is it radical here? This is something they're getting instead of going to jail, where they could be searched day and night for no reason at all. Instead, they're getting something else. It's a package of rights, which includes intrusiveness, but almost anybody is going to pick it over going to jail. It's a lesser form of reaction of the government to committing a crime. You commit a crime, and the government says to you in very general terms, well, we've got two things we're going to do. One thing is put you in jail, and the other thing is let you not be in jail but subject to search on a whim at any time. I mean, who isn't going to pick the latter? I mean, they're all going to pick that. So it just doesn't strike me as fundamentally morally problematic or even inconsistent with the Fourth Amendment. On its surface, if you have cases that force us to say that, I'm willing to follow the law. Well, I think it is inconsistent, Your Honor, with the precedent from both the Tennessee Supreme Court about the difference between parole and probation as well as Supreme Court law from the Knights case and the Sampson case. Both the Knights case and the Sampson case. Let's talk about the continuum. There's a Fourth Amendment continuum where parolees have less rights than probationers do. A probationer doesn't have as much rights as you do in your home, but a probationer, Your Honor, the Department of Justice statistics. So if you're going to have a continuum, it has to be a smooth continuum, you're saying. It can't be a sharp continuum. Well, not necessarily, but in terms of the Fourth Amendment, I mean, the Fourth Amendment doesn't say if you're on probation you're excluded from any protection under the Fourth Amendment. I mean, the Fourth Amendment says the right of the people to be secure. There are nearly four... I mean, it sounds good rhetorically, but people in prison are subject to all kinds of searches, right? Right, and there's a whole body of law that explains that, and it makes sense, but probationers... I'm explaining to you what my concern is so you can address it, but I think you have addressed it, so I appreciate it. Well, I have a couple more points about your concern. Well, are you satisfied? I understand what your point is, I think. Okay. All right, you'll have your rebuttal time. All right, thank you. You can at least state on that if you choose. She's not advising now, though. Well... May it please the Court. Gwen Stamper on behalf of the United States. Your Honor, I will begin by addressing your question about Henry. In Henry, this circuit interpreted or evaluated an Ohio statute which required reasonable suspicion for searches of probationers. In Henry, this circuit followed the Griffin two-step analysis, which is distinct from the Knight's analysis, which the government asks that you follow. Specifically in Henry, this Court found that given the facts of that particular search of that probationer's home, that there was not in that case reasonable suspicion as consistent as required by the statute. That case in no way... It was an Ohio statute, Your Honor. So all we held was that there was a violation of the Ohio statute? Yes, Your Honor. In fact, Your Honor, in United States v. Smith, this Court, the Sixth Circuit, held that nowhere in the trio of cases, Griffin, Knight's, and Henry, was reasonable suspicion required. I thought that the Henry case came out of Kentucky. Was he arrested in Ohio and searched up there? Your Honor, I apologize if I... I think it was before Judge Johnstone, who used to be at Paducah. My apologies, Your Honor. I think they were talking about a Kentucky case. My apologies, Your Honor. Your Honor, following the terms of Tessier's probation, his expectation of privacy was profoundly diminished, if not extinguished. He agreed to searches of his home, where his officer could come into his home and speak with Tessier. He agreed to searches of his computer as part of the probation conditions of his sex offender form. Finally, he agreed to searches of his person, vehicle, and property at any time. When interpreting that particular clause, this Court should look to the Tennessee Supreme Court's interpretation of that clause, as the Tennessee Supreme Court ruled in State v. Turner. In State v. Turner, the Tennessee Supreme Court interpreted the clause without a warrant to mean without suspicion. Contrary to Tessier's argument that the Tennessee Supreme Court was considering a constitutional analysis, in footnote 12 of Turner, the Tennessee Supreme Court interpreted a matter of Tennessee law. In so doing, they cite it to Illinois v. Wilson, where the Supreme Court of Illinois similarly declined to find a hidden suspicion requirement in a similar clause. The Supreme Court has explicitly stated that federal courts must consider a state court interpretation of a state probation order. Specifically, in Griffin, at 875, the Supreme Court explained that they must take the Wisconsin Probation Regulation as defined by the Wisconsin State Supreme Court. And it is for that reason, Your Honors, that the Ninth Circuit in Kings interpreted a similar provision as understood by the California Supreme Court. The California, excuse me, the Ninth Circuit made clear that the matter, the interpretation of the probation order was a matter of state law. And the Fifth Circuit also made clear in Parrish v. Wainwright that an interpretation of a parole order is a matter of state law. From this, Your Honor, Tessier had a profoundly diminished, if not extinguished, expectation of privacy. On the other side of the night's balancing, the state has a strong interest in monitoring and supervising probationers, particularly a two-time convicted sex offender. Do you think that if this defendant had not given his consent in advance for a warrantless search that they would have had to have reasonable suspicion? Your Honor, the government, that would be a much more difficult case for the government to argue, Your Honor. But we need not decide that here, Your Honor, because Tessier consented to a search of his computer, his person, his home, and his vehicle at any time by his officers. Warrantless search, right? Or did it say warrantless search? He consented to a search without a warrant, and as Turner made clear, Tennessee law interprets that to mean without suspicion. Are all the cases that you refer to that deal with applying state law to the interpretation of the condition, are those in your brief? No, Your Honor. No, Your Honor. I will happily follow up with the court with those citations. Well, I wasn't writing. It occurred to me I should have been, perhaps. Of course. I can briefly repeat them, Your Honor. The Fifth Circuit case is Parrish v. Wainwright. I don't want you to take a bunch of time. Just give us the citation. You don't have to give us the name. I'm sorry. Thank you, Your Honor. Parrish v. Wainwright. And in Kings, we have cited that, Your Honor, and that is in footnote 3. Thank you, Your Honor. In evaluating the strength of the state's legitimate interest, we must consider the nature of the offense. Possession of child pornography is a crime that necessarily requires intensive supervision. A home visit, as Tessier suggests, would be woefully insufficient for the government to monitor and supervise whether or not the probationer is committing the crime again. In Knights, the Supreme Court made clear that a state has a strong interest in preventing recidivism and also promoting positive citizenship. We know that sex offenders, particularly those in possession of child pornography, have a high rate of recidivism, meaning the state has an even stronger interest in monitoring how probationers are doing, and that monitoring necessarily requires a more invasive search of the home. Do you think that there's grounds for a more invasive search of somebody involved in pornography than someone who's previously been convicted of a drug offense? Your Honor, yes, because pornography necessarily requires searching for a computer and necessarily requires looking on that computer. There might be evidence of, for example, Your Honor, drug sales in a home during a home visit with a probation officer. A probation officer might find drugs or drug paraphernalia near or around the home. However, the nature of child pornography is that it's hidden in a computer, and as here, it was necessary to look for an electronic device, for example, underneath a mattress. Is there any difference between going in his house and looking around and seeing a computer and opening that up or turning the bed upside down and looking under the mattress? Is that the same idea? Yes, Your Honor. I don't see any distinction. How about tearing the mattress up, cutting it open with a knife and looking? Could they do that under this? I think not, Your Honor. Why not? That raises a point that I would like to make. Affirmance today would not lead to unreasonable searches of probationers. There are a number of circumstances in which a search of a probationer would be unreasonable. For example, if the search were harassing, if the search lasted too long or were too frequent, for example, if probationers were searched while they were sleeping or while they were working, if the search were motivated out of personal animus, if the search were not motivated by a legitimate law enforcement purpose. Doesn't it just generally relate to the connection to the purposes of the probation? Yes, Your Honor. There might be some searches related to the purposes of probation where you'd have to slit the mattress. Exactly, Your Honor. Do any of these cases talk in terms of that one's more egregious than the other because there's animus or because they go too far or because it's in the dark of the night or something like that? Or are you just making that up yourself? Your Honor, the Tennessee State Supreme Court in State v. Turner articulated these concerns and mentioned that it is not the case that an affirmance here today or an affirmance there would lead to inappropriate searches by probation officers or searches that would offend the Fourth Amendment because those searches still have to be reasonable. And, Your Honor, I can address United States v. . . Oh, excuse me. I can address the issue of adhesion and consent that Tessier raised in his brief. He claims that his consent to these terms of probation was not voluntary, and I would like Your Honors to consider that there were two separate constitutional transactions that occurred on September 30th. First, Tessier waived his trial rights in exchange for a term of probation. There was nothing constitutionally defective about that proceeding, nor does Tessier claim there was. Second, Tessier met with a probation officer, and the probation officer gave him two forms and asked Tessier to sign them. Consistent with Schneckloth, the probation officer was not required to tell Tessier that he had a right not to sign them. Tessier had an opportunity, as he was informed on the second page of his sex offender probation order, to seek modification before the sentencing court. This in itself shows that this was not an adhesion contract. To the contrary, the form, the sex offender probation form, has a number of particular forms in which the sentencing judge could have made comments, and that is available on the record in the District Court Exhibit 25.1. For this reason, this was not an adhesion contract, nor was it coercive. Well, if it had gone before the judge, do you think the judge would have modified it in any? Your Honor, I think it would be eminently reasonable for a sentencing judge to modify a term of probation that, for example, prevented the probationer from gaining or maintaining employment. And the fact that there were a number of options for the judge to modify the terms of the probation agreement on the probation form itself shows that that is the case. And, Your Honors, finally, I would like to address, if Your Honors are so inclined to believe that this was an error of law, the officers here acted in good faith on the binding precedent of State v. Turner, which made clear that the provision at issue here, without a warrant, meant without suspicion. Finally, we would cite to United States v. Heon, which would argue that the probation officers made a reasonable mistake of law if this court finds that the probation agreement did not allow for search without a warrant. Do you think this case would be any different if, when the officers came to his home, they asked him for oral consent again, and he said, do you mind if we look for your computer and then look in your computer? And he just said, yes, or no, it's fine, go ahead. Your Honor, there was significant consent on the day of the search itself. When the officers came to the home, Tessier's stepfather opened the door and allowed the officers into the apartment. When the officers went up to Tessier's, or, excuse me, went to Tessier's bedroom, Tessier consented to a search of his phone. The record is not sufficiently developed for the trial court to make the finding that there was consent to search underneath the mattress. If that had been the case, Your Honor, then there would have been a much stronger argument that this was based on the consent as given that day. And if there are no further questions, Your Honor, I ask that you affirm. Mr. Tessier did not consent to the search underneath his mattress, and I think that's clear from the record. The government also... He did give consent to look at his phone, right? Your Honor, I don't remember about the phone, but I think after they found the computer, the officer opened it up and started looking, and he said, okay, perhaps, but I don't recall about the telephone. But I don't know that the phone's really relevant to the case. They could have gone there and said, do you mind if we look at your computer and look under the mattress? And he could have consented then, right? Sure, anybody can consent at any time, I think, Your Honor. But he did not consent to them going underneath his mattress, looking in the drawers in the kitchen, opening the kitchen cabinets, looking in the drawers in his bedroom, looking in his closet. They just went and did it. So the U.S. Marshals... Wait a minute now. Let me ask you this question. Yes, sir. He did give a written consent when he went on probation, right? Well, Your Honor... Of some sort. Let's talk about that. His lawyer negotiated this plea bargain at what's called the jail docket, which is kind of like the emergency room of the law, and agreed that he's going to get six years of probation when you go up to criminal court, because the jail docket's in General Sessions Court. He doesn't have jurisdiction to finalize a felony case. Sounded pretty good, though, at the time, right? So he stayed in jail, went to criminal court, and... Yes, sir? Went to criminal court and entered the plea agreement. At the time he pled guilty, and this is all in the record and in the briefs, the conditions of probation were never discussed with him. He never agreed to the conditions of probation before he pled guilty. The judge did not review the conditions of probation. His own lawyer didn't review the conditions of probation. That was done after the fact. So this is a contract of adhesion. It's a take-it-or-leave-it choice between one party that has a lot more power and another party that has very little power. So in that sense, and the Henry case talks about this as well, that it is not at all clear that that is a valid consent to begin with to what he did agree to. But be that as it may, Your Honor. Did Henry decide the issue of consent? No, Your Honor. But Henry did talk about the fact that it remains an open question and it is a thorny issue about whether that consent would be valid in that type of a situation. The government also misreads the Turner case by saying that officers reasonably relied on Turner. Turner did discuss the same warrant waiver provision. It says, I consent to a search of my residence without a warrant. But in footnote 12 of the Turner opinion, Your Honors, the Tennessee Supreme Court says, footnote 12, the point of the standard search condition, the condition in this case, used by the Tennessee's Board of Probation and Parole, is to alert parolees that law enforcement officers will be able to search them in their premises without the usual necessity of first obtaining a judge's or a magistrate's permission. What Mr. Tessier waived, if he did, was the requirement that there be probable cause and a judge sign a warrant. Nothing in the search condition said that he agreed to a suspicionless search. When you have a contract of adhesion, any ambiguity has got to be drawn against the drafter. If the Tennessee Board of Probation and Paroles wanted to try to have a suspicionless search, they could have added three words to that search condition without any suspicion. But they didn't do that. The court goes on in footnote 12. Okay, thank you, Your Honor. Your time is up. Thank you. May I say one more thing on that point? Sure. Thank you so much. The court goes on to say that they recommend that Tennessee rewrite that provision because it's not clear. And so that is not a valid consent, Your Honor. Thank you very much. Thank you both for your argument. We'll consider the case carefully. And I believe the remaining case is on brief. So you may adjourn the court.